27 F.3d 566
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
George Norris HALL, Petitioner-Appellant,
v.
Henry GRAYSON, Respondent-Appellee.
 No. 93-1444.
 United States Court of Appeals, Sixth Circuit.
 June 14, 1994.
 
 Before: JONES, BOGGS, and DAUGHTREY, Circuit Judges.
 PER CURIAM.
 
 
 1
 The appellant in this Sec. 2254 action, George Norris Hall, is a prison inmate in the custody of the defendant, who is warden of the state correctional facility in Jackson, Michigan. Hall is serving multiple life sentences as a result of his 1975 convictions for first-degree premeditated murder and felony murder. The circumstances of his arrest and convictions are recited in People v. Hall, 83 Mich.App. 632, 269 N.W.2d 476 (1978), in which the Michigan Court of Appeals affirmed the trial court's judgment of guilt but remanded for resentencing. Hall subsequently pursued an unsuccessful post-conviction action in state court and, in December 1982, filed a petition for writ of habeas corpus in federal court. The district court denied relief and dismissed the petition; we subsequently affirmed the district court's action. See Hall v. Grant, No. 84-1531 (6th Cir. Nov. 20, 1985).
 
 
 2
 Hall then filed this, his second federal habeas corpus petition, in February 1992, asserting that he had received ineffective assistance of counsel at his 1975 state trial, due to his attorney's conflict of interest. The district court concluded that the current application for relief constituted an abuse of the writ, under McCleskey v. Zant, 499 U.S. 467 (1991), and dismissed Hall's petition. On appeal from this order, the appellant contends that the district court erred in failing to find just cause for the delay in pursuing this claim. We disagree and affirm.
 
 
 3
 As noted in the district court's memorandum opinion, the single issue presented by this appeal is whether Hall's "defense at trial was sabotaged by a conflict of interest" on the part of his trial attorney. Hall had been indicted along with a co-defendant, Leo McGill. Each defendant had his own attorney, and both sought a severance in the trial court, claiming inconsistent defenses. (Hall's counsel intended to rely on the alternative defenses of insanity and claim of right; McGill's defense was based on mistaken identity.) The trial court apparently determined that the defenses were not inconsistent, but "merely different," and denied severance.
 
 
 4
 Hall and McGill were thereafter tried jointly, with mixed results; Hall was convicted of the attempted robbery and murder of various members of a poker-playing group of his acquaintances; McGill was acquitted. The crux of Hall's current complaint concerns his decision not to testify in his own behalf at trial, which decision he now claims was urged on him by his counsel, Eugene Bennett, in order to protect the co-defendant, McGill. As a result, Hall insists, he was prevented from presenting a credible claim-of-right defense and was therefore wrongfully convicted on three counts of felony murder. (Claim of right would not, of course, be a valid defense to two other counts of premeditated murder, for which Hall was also convicted and sentenced to two terms of "non-parolable" life imprisonment.)
 
 
 5
 The trial transcript shows, however, that Bennett advised Hall not to testify principally because of his client's prior convictions for armed robbery, which the trial court had ruled admissible for impeachment purposes, and also because, in Bennett's words, Hall "was taking medication and he was a little bit zombie-like" during trial.
 
 
 6
 Hall claims that it was not until 1988 or 1989 that he came into possession of a letter written to his trial attorney by Charles Palmer, McGill's attorney, in 1979. The letter accompanied a copy of a brief "filed in the Hall-McGill case regarding separate trials," which McGill's attorney thought "m[ight] be helpful to George [Hall] in his appeal." Attorney Palmer continued:
 
 
 7
 As far as my recollections of the trial go, I clearly remember asking you on a number of occasions to keep George Hall off the stand. I thought it would be harmful to Leo's case. I talked to Leo about it too, and I believe that he talked to George Hall. Leo and I tried everything we could think of to convince you and George to keep George off the stand. I thought that Leo would surely lose if George testified. If George said it wasn't Leo with him, then Wilson would have asked who it was. Since George wouldn't tell, it would have hurt Leo's case. If George testified that he didn't remember who it was, that would also look like he was protecting Leo. Obviously, if George had testified that Leo was with him, then Leo would have been convicted. In any case, Leo would have lost if George testified. We didn't want that and did everything we could to keep George from testifying since the trials were together.
 
 
 8
 Hall claims on appeal that the pronoun "we" in the last sentence quoted above refers to Bennett and Palmer, the two attorneys, and insists that it constitutes proof of a concerted effort by the lawyers to help co-defendant McGill, to Hall's detriment. This argument is patently without merit. The obvious antecedents in the quoted paragraph are the author of the letter (McGill's attorney) and McGill himself. Moreover, there was no testimony at the evidentiary hearing in the district court that would refute this rather obvious interpretation of the 1979 letter to Eugene Bennett. Nor was there any other testimony to support Hall's claim that Bennett was ineffective in representing him in 1975. Hence, we conclude that the appellant has failed to demonstrate prejudice of the kind necessary to justify the filing of a subsequent petition for habeas corpus.
 
 
 9
 Moreover, Hall has also failed to establish good cause for the delay in bringing his claim of ineffective assistance to the district court's attention. Clearly, the question of trial counsel's effectiveness could have been litigated in the earlier Sec. 2254 action. On this point, the district court filed a thorough and well-reasoned memorandum opinion and order, which is fully supported by the record.
 
 
 10
 For the reasons given above and on the basis of the district court's opinion, we AFFIRM the judgment below.